MICHAEL J. GABLEMAN, J.
¶ 41. (dissenting). Two important issues are presented in this case: (1) should Wisconsin recognize the mature minor doctrine, which permits those under 18 years of age to refuse life-saving medical care under some circumstances?; and (2) does a minor have a due-process right to refuse medical treatment? Instead of answering them, the court washes its hands of the matter and declares the case moot. As this court has a responsibility to decide matters of great public importance that are likely to recur but evade appellate review, I dissent from the decision to dismiss this appeal.
¶ 42. A brief recitation of the facts and procedural history is necessary to demonstrate the absurdity of the *692 majority's refusal to decide this case. In February 2012, 15-year-old Sheila W. was diagnosed with aplastic anemia, a condition that prevents her bone marrow from producing blood cells. If left untreated, the condition is fatal. Sheila was admitted to the hospital on February 25, 2012 and given antibody treatments. After three days of treatment, however, her blood platelet count remained at a critically low level, putting her at risk of spontaneous hemorrhage, cardiac arrest, and respiratory distress. Sheila's treating physician thus recommended that she undergo blood transfusions. Without these transfusions, her doctor stated that she would die.
¶ 43. Sheila and her parents, though, are Jehovah's Witnesses, who believe that the Bible requires them to "abstain from blood." Receiving a blood transfusion would violate this belief, and Sheila described it as tantamount to "rape." Her parents, citing deference to their daughter's decision, stated they would not force a transfusion upon her, even knowing she would die.
¶ 44. Due to the high risk of imminent death, Dane County took emergency custody of Sheila on February 29. The County then filed a petition for protective services the next day, seeking temporary physical custody of Sheila to administer the blood transfusions. See Wis. Stat. § 48.13(10). On Friday, March 2, the circuit court held a hearing in the hospital. The court found that Sheila's parents were "seriously endangering]" her health by refusing to consent to the transfusions. But instead of granting the petition for temporary physical custody, the court appointed a temporary guardian pursuant to Wis. Stat. § 54.50(1). The order gave the guardian authority to "[d]ecide whether to consent to medical treatment." Sheila's motion to stay the order pending an appeal was denied by the circuit court. Sheila's appointed guardian consented to the blood transfusions, the first of *693 which was successfully performed later that day. The following Monday, the day before Sheila was scheduled for another transfusion, she filed a notice of appeal. The court of appeals also denied Sheila's motion to stay the transfusions pending an appeal, stating that "the irreparable harm Sheila would suffer if forced to undergo continued blood transfusions against her religious beliefs is outweighed by the irreparable harm to the public interest in preserving life and protecting minors that would occur if Sheila were to die while the appeal is pending." However, the court did state that "it would be open to a motion to expedite this appeal to minimize the length of time Sheila receives transfusions, in the event that the guardianship order is ultimately reversed by this court or the Wisconsin Supreme Court."
¶ 45. By the time the case was fully briefed before the court of appeals, the temporary guardianship order had expired. While conceding that her appeal was thus moot because she no longer needed the transfusions, Sheila argued that her case nonetheless fell under one of the exceptions to the general rule that a court does not decide moot issues. We have stated that a court may address moot issues when: the issue has great public importance, a statute's constitutionality is involved, a decision is needed to guide the trial courts, or the issue is likely to repeat yet evade review because the situation at hand is one that typically is resolved before completion of the appellate process. Sauk Cnty. v. Aaron J.J., 2005 WI 162, ¶ 3 n.l, 286 Wis. 2d 376, 706 N.W.2d 659 (per curiam). In a two-page summary order, the court of appeals concluded that Sheila's appeal did not satisfy any of the exceptions to mootness.
¶ 46. Sheila filed a petition for review on November 27, 2012. In its response to the petition, Dane County argued that the court of appeals correctly *694 dismissed the case as moot. On January 15, 2013, we granted Sheila's petition for review. On February 7, we assigned the case for oral argument. Each party filed briefs. Oral argument was held April 11.
¶ 47. The subject of mootness was only glancingly touched upon at oral argument. In her opening statement to the court, Dane County's attorney said, "Dane County asks that you dismiss this appeal as moot. The County believes that's the most appropriate outcome in this case, one that leaves the delicate social balancing that we have been talking about among complex and competing policy interests to the legislature." No follow-up questions on mootness were asked. In fact, the issue of mootness received only passing, perfunctory references during the 70-minute oral argument. No member of this court asked Sheila's attorney for her position on mootness, and she did not offer it.
¶ 48. Based on this court's actions since granting the petition for review in January, Sheila W is entitled to feel blindsided by today's decision to dismiss her appeal as moot. And upon reading the per curiam issued by four members of this court, her shock is likely to turn to confusion. The per curiam assures us that "[t]his case undoubtedly presents issues of great public importance. . . . Furthermore, it appears that orders appointing temporary guardians for the purpose of determining whether to consent to life-saving medical care are capable and likely [to repeat] and yet will evade appellate review." Per Curiam, ¶ 7. In other words, according even to the per curiam opinion, Sheila meets two of the exceptions to mootness.[1]
*695 ¶ 49. Despite these conclusions, the per curiam holds: "In this instance, we deem it unwise to decide such substantial social policy issues with far-ranging implications based on a singular fact situation in a case that is moot." Per Curiam, ¶ 8. I do not understand what the majority means by this. "Singular," as the per curiam uses the word, would seem to mean "unique," "beyond what is ordinary," or "strange or unusual." The American Heritage Dictionary of the English Language 1636 (5th ed. 2011). I fail to see why the facts in this case make it a bad candidate to evaluate whether Wisconsin should adopt the common law mature minor doctrine or decide the scope of a minor's due-process rights. The mature minor doctrine asks when and whether someone under the age of 18 should be permitted to refuse medical care. See e.g., Illinois v. E.G., 549 N.E.2d 322, 327-28 (Ill. 1989). This case presents about as clear an opportunity to address that question as can be imagined. Furthermore, why does a "singular fact situation" make a particular case unworthy of our review? Every case to some extent has a "unique" set of facts, and many have "strange or unusual facts." To say that a case of "great public importance" cannot be resolved because the particular facts are "singular" is no answer at all.[2]
¶ 50. Paradoxically, the court uses Eberhardy v. Circuit Court for Wood Cnty., 102 Wis. 2d 539, 307 *696 N.W.2d 881 (1981) as its fig leaf. Eberhardy presented the question of "whether the circuit court has jurisdiction to authorize the duly appointed guardians of an adult mentally retarded female ward to give their consent to surgical procedures which will result in the permanent sterilization of the ward when such sterilization is for contraceptive and therapeutic purposes," and if the circuit court had such jurisdiction, whether it was "appropriate for the court to exercise it for this purpose." Id. at 541-42. We held that although the circuit courts had jurisdiction over a guardian's petition seeking sterilization of an incompetent ward, they were not permitted to exercise that jurisdiction until the legislature provided clear guidelines in the area. Id. at 578-79. In doing so we stressed the "irreversible" nature of sterilization. Id. at 567, 568, 572, 575, 577, 585, 592. However, in a passage that should give the majority pause, we stated: "The inevitability of the consequences of not acting judicially in this case does not approach the degree that might force a choice if the question were one of invoking state power to order treatment for one who would die without it." Id. at 575. Thus by its own terms Eberhardy does not dictate the result reached by the court today. In fact, it counsels just the opposite.
¶ 51. Equally important, Eberhardy shows that the legislature does not always act quickly in response to this court's prodding. The only Wisconsin statute to address the sterilization of incompetents, Wis. Stat. § 54.25(2)(c)e., provides that if an individual is declared incompetent and a guardian appointed, the circuit court may "declare that the individual has incapacity.. . to consent to sterilization, if the court finds that the individual is incapable of understanding the nature, risk, and benefits of sterilization, after the nature, risk, *697 and benefits have been presented in a form that the individual is most likely to understand." Yet it was not until 25 years after Eberhardy that this statute was enacted! 2005 Wis. Act 387, § 100 (effective May 25, 2006). As Justice Callow pointed out in his Eberhardy dissent, "[a]part from any aversion legislators may have to addressing a controversial question, there is the added practical problem of the press of legislative business. The thousands of problems presented to the legislature tax its ability to respond thoughtfully to the multiple problems of society." 102 Wis. 2d at 605. As the history following Eberhardy reveals, the Sheila W.s of this state may have to wait a long time before the legislators on white horses arrive. In the meantime, the actual problem of what to do with minors who refuse life-saving treatment will remain unresolved.
¶ 52. Additionally, the question of the mature minor doctrine is not just an abstract academic debate. The decision over whether this state should adopt such a doctrine will literally have life or death consequences for people such as Sheila W Currently, the circuit courts have no standard to apply when presented with a minor who refuses life-saving medical care. Frighteningly, this raises the specter that a child's life could depend on which judge within a county is assigned the case.[3] *698 Unfortunately, four members of this court refuse to offer any guidance to circuit court judges who must actually adjudicate these difficult situations.
¶ 53. The case is just as moot now as it was when we granted the petition for review back on January 15. If the court did not want to decide the issues presented in this case, it should not have granted the petition for review, ordered briefing, and then held oral argument. What function is served when a law-developing court takes a summary order declaring a case moot and affirms it with a summary order declaring a case moot? Life is about hard choices, particularly for members of a state high court. Unfortunately, today the only thing the parties receive for their time and trouble before this court is abdication dressed as modesty.
¶ 54. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and ANNETTE KINGSLAND ZIEGLER join this dissent.

 I would add that this case also satisfies a third exception to mootness: a decision is needed to guide the trial courts.

 Justice Prosser's concurrence attempts to provide the rationale lacking from the per curiam. Much of the concurrence, however, reads like a dissent from a decision to adopt the mature minor doctrine, which this court has not done. See concurrence, ¶¶ 24, 31, 34, 35. To be clear, this dissent does not take a position on whether the court should adopt the mature minor doctrine or whether minors have a due-process right to refuse medical treatment because a majority of this court inexplicably does not want to decide those issues.

 The concurrence states that we should not adopt the mature minor doctrine because it would put courts "in the unenviable position of either prohibiting or permitting a minor's suicidal conduct." Concurrence, ¶ 34. Aside from inappropriately assuming that this court would adopt the doctrine if the case were not moot, the concurrence's statement is ironic because the decision of this court to not answer the questions presented is what will put circuit courts in the position of making ad hoc life or death decisions. If Sheila were to relapse and require blood transfusions again before her eighteenth birthday, how would the members of the majority advise a court *698 to handle the matter? Would it have been wrong for the circuit court judge in this case to allow Sheila to die? Inaction by the majority will lead to the patchwork approach the concurring Justice is attempting to avoid.